[Cite as *State v. Donoho*, 2018-Ohio-4950.]

## IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-G-0151** |
| TYLER KYNON DONOHO, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Chardon Municipal Court, Case No. 2017 CRB 00063.

Judgment: Affirmed.

*James M. Gillette*, City of Chardon Police Prosecutor, PNC Bank Building, 117 South Street, Suite 208, Chardon, OH 44024 (For Plaintiff-Appellee).

*William Carlin* and *Mark W. Biggerman*, Carlin & Carlin, 29325 Chagrin Blvd., Suite 305, Pepper Pike, OH 44122 (For Defendant-Appellant).

TIMOTHY P. CANNON, J.

{¶1}    Appellant, Tyler Kynon Donoho, appeals from the judgment entered by the Chardon Municipal Court on January 18, 2018, denying his emergency motion to modify the conditions of his probation.  Appellant raises one assignment of error for our review:

> The Trial Court erred in denying Defendant's Motion to Modify the Conditions of his Probation due to a change of circumstances so as to permit the Defendant's therapeutic use of THC as recommended and prescribed by a state licensed physician.

For the reasons that follow, the trial court's judgment is affirmed.

**{¶2}** On January 23, 2017, two complaints were filed in the Chardon Municipal Court, whereby appellant was charged with one minor misdemeanor, Disorderly Conduct, in violation of R.C. 2917.11(A)(1), and one first-degree misdemeanor, Aggravated Menacing, in violation of R.C. 2903.21(A). On June 13, 2017, appellant pled no contest to Aggravated Menacing, and the Disorderly Conduct charge was dismissed.

**{¶3}** The municipal court sentenced appellant to 180 days in jail, granted credit for time already served, and suspended the remaining 107 days of the sentence. Appellant was placed under community control sanctions for two years. No appeal was taken from the court's final sentencing order.

**{¶4}** Relevant to the matter at hand, one of the terms of appellant's community control is the following:

> I will **NOT** consume alcohol or possess, use, purchase, or have under my control any narcotic drug, mind altering substance or other controlled substance, including any instrument, device or other object used to administer drugs or to prepare them for administration, unless it is lawfully prescribed for me by a licensed physician and taken in accordance with the prescribed dosage.
>
> - I agree not to abuse any over the counter medication or mind altering substances and to inform my Probation Officer of any un-prescribed drugs.
> - Upon request, I will submit to a **RANDOM** breath, urine, or blood test to detect the presence of alcohol or drugs in my body and pay all required fees. If consuming Alcohol &/or Drugs are suspected – **MUST** submit to breath, blood or urine testing device by a Law Enforcement Officer or qualified Agent of Chardon Municipal Court.
> - The Probation Department can call me at *random* to submit to an alcohol or drug test. I understand I have one (1) hour to report to the Probation Department to submit to a test. Any positive, diluted or adulterated results will be reported to the Court and may result in a violation of probation against me. Also, my failure to appear when requested will result in a warrant for my arrest.

Appellant signed an acknowledgment, indicating he understood that "failure to obey any term or any Court imposed condition can cause further Court action and the original sentence may be ordered into execution" and that, "until such terms are modified, they shall remain in effect as written above."

{¶5} On November 8, 2017, the matter came on for hearing upon the municipal court's own motion charging appellant with violation of his probation. The court found there was probable cause to believe that appellant had consumed THC based on appellant's admission to his probation officer. Appellant was arrested and denied bond.

{¶6} A hearing on the violation was held on November 15, 2017. Dr. Jane Li-Conrad, D.O., was subpoenaed on behalf of appellant, with a request she bring appellant's complete file; no transcript of this hearing has been provided on appeal. The municipal court dismissed the violation and ordered appellant to be released from jail. He was granted credit for the seven days he was held in jail, leaving 100 days on appellant's suspended sentence. The court ordered appellant to remain under community control for the remainder of the two years originally ordered, with no change to the original terms and conditions. No appeal was taken from this final order.

{¶7} On January 4, 2018, appellant filed a "Motion in Limine," requesting the municipal court to issue an order "precluding the consideration of any tests, including urine tests, that are positive for marijuana with regard to any *potential* probation violation." (Emphasis added.) The motion begins by stating:

> As set forth below, Tyler has a prescription from a psychiatrist, Dr. Noah Miller ("Dr. Miller"), for Marinol. The Affidavit and Curriculum Vitae of Dr. Miller as well as the prescription for Marinol and recommendation for marijuana are attached hereto as exhibit "A." Further, in support of this Motion is the Affidavit and narrative report

3

of Willard Donoho, the father of Tyler and are attached hereto as exhibit "B."

Appellant then describes the purpose of the motion, which "is to bring before the Court the circumstances of Tyler, Tyler's prescription and recommendation for marijuana and the rationale for the prescription and recommendation as set forth in the Affidavit and report of Dr. Miller * * * and the Affidavit and narrative of Willard Donoho." Appellant requests the municipal court to "issue a ruling on whether the Court will recognize the prescription and recommendation for marijuana, so that if Tyler tests positive for THC, the Court will consider that a violation of his probation [sic]."

{¶8} By judgment entry issued on January 11, 2018, the municipal court denied the motion, stating it will find appellant in violation of his probation if he tests positive for "THC and/or cannabis and/or marijuana."

{¶9} As a result, appellant filed an "Emergency Motion to Modify Conditions of Probation" on January 17, 2018. In support of the motion, appellant "incorporate[d] by reference, as if fully restated herein the Affidavits, Memorandum and Brief" from the Motion in Limine. The Emergency Motion to Modify includes no additional exhibits and asserts the following:

> The Defendant has now come under the medical care of Dr. Noah Miller (Psychiatrist) that consists of a recommendation for medical marijuana and a prescription for Marinol, which essentially means therapeutic use of the chemical, THC. Mr. Donoho, however is currently taking the FDA-approved Marinol, which is a cannabinoid, as prescribed by Dr. Miller. In other words, he is taking a synthetic THC.
>
> On 1-11-18, the Court denied Mr. Donoho's Motion in Limine, and held that Mr. Donoho would be in violation of the terms of his probation if he tests positive for THC. However, the fact that Mr. Donoho now has a prescription, and recommendation for THC,

4

constitutes a change in circumstances and warrants the modification of the terms of his probation.

**{¶10}** By judgment entered January 18, 2018, the municipal court denied the Emergency Motion to Modify, stating the court will not amend the terms of appellant's probation so as to permit appellant's therapeutic use of THC as recommended and prescribed.

**{¶11}** Appellant filed a notice of appeal from this entry and argues the municipal court's denial of his motion was an abuse of discretion, i.e., a "failure to exercise sound, reasonable, and legal decision-making." *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting *Black's Law Dictionary* 11 (8th Ed.2004).

**{¶12}** We find no basis upon which to conclude the municipal court abused its discretion.

**{¶13}** Ohio Revised Code Chapter 3796, "Medical Marijuana," became effective on September 8, 2016. "Medical marijuana" and "marijuana" are distinct substances. "Medical marijuana" is defined as "marijuana that is cultivated, processed, dispensed, tested, possessed, or used for a medical purpose." R.C. 3796.01(A)(2). The definition of "marijuana" is adopted from R.C. 3719.01(O), which provides: "'Marihuana' means all parts of a plant of the genus cannabis, whether growing or not; the seeds of a plant of that type; the resin extracted from a part of a plant of that type; and every compound, manufacture, salt, derivative, mixture, or preparation of a plant of that type or of its seeds or resin."

**{¶14}** "Medical marijuana" is a Schedule II Controlled Substance. R.C. 3796.01(B). "Marijuana," on the other hand, is a Schedule I Controlled Substance, as are hallucinogenics containing cannibinoids, THC, and synthetics or derivatives thereof. R.C.

5

3719.41 Schedule I (C)(19) & (27). Marinol is the brand name for a federally-approved medicine that contains "dronabinol," a synthetic form of THC and a Schedule III Controlled Substance. R.C. 3719.41 Schedule III (F)(1) ("Dronabinol (synthetic) in sesame oil and encapsulated in a soft gelatin capsule in a United States food and drug administration approved drug product").

{¶15} Pursuant to R.C. 3719.06(A)(1)(a), a "licensed health professional authorized to prescribe drugs" may prescribe Schedule II and Schedule III controlled substances "if acting in the course of a professional practice, in accordance with the laws regulating the professional's practice, and in accordance with rules adopted by the state board of pharmacy[.]"

{¶16} "Medical marijuana," a Schedule II controlled substance, is only permitted by law to be cultivated or processed in Ohio by an entity that is licensed by the department of commerce and is only permitted to be dispensed in Ohio at a retail medical marijuana dispensary that is licensed by the state board of pharmacy. R.C. 3796.09(A) & R.C. 3796.10(A). Further, "[p]atients and caregivers shall purchase medical marijuana *only* from a medical marijuana dispensary with an active certificate of operation issued by the state board of pharmacy, or where authorized pursuant to a reciprocity agreement established pursuant to section 3796.16 of the Revised Code." Ohio Adm.Code 3796:7-2-05(D) (emphasis added).

{¶17} Appellant, however, has not presented any evidence establishing that "medical marijuana" is either cultivated, processed, or dispensed by licensed facilities in the state of Ohio at the present time or that any reciprocity agreements have been

6

established with other states.  Further, appellant is prohibited from leaving the state under the terms of his community control.

{¶18}  As a result, any positive result for THC on a drug test would be the result of appellant having used (1) "marijuana," a Schedule I controlled substance, which is a clear violation of Ohio law, or (2) Marinol, a Schedule III controlled substance, which requires a valid prescription from a licensed health professional, pursuant to R.C. 3719.06(A)(1)(a).

{¶19}  Appellant admits the trial court would be unable to distinguish whether a positive result for THC resulted from the use of Marinol, which may be permissible, or from the use of "marijuana," which is not permissible.  Therefore, it was not an abuse of discretion for the trial court to deny a modification of appellant's community control.  If appellant tests positive for THC and is charged with a violation of the terms of his community control, he is permitted at that time to raise the affirmative defense that he is using Marinol in accordance with a valid prescription.  In that event, the trial court should include in the record what factors it considers in determining whether appellant has violated the terms of his community control.

{¶20}  Appellant's sole assignment of error is not well taken.

{¶21}  The judgment of the Chardon Municipal Court is hereby affirmed.


DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion,

COLLEEN MARY O'TOOLE, J., dissents.

_____

7

DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion.

{¶22} I concur in the decision to affirm the lower court's ruling. I write separately to more fully explain the reasons why Donoho has no valid grounds to seek modification of the terms of his probation to permit the use of medical marijuana.

{¶23} Donoho cannot prevail for several reasons. First, the use of medical marijuana is not yet legal in Ohio. While R.C. 3796.22(A)(1) provides that a person "[w]ho obtains medical marijuana from a retail dispensary licensed under this chapter" may use such marijuana, Donoho's counsel failed to demonstrate that there are any approved dispensaries in Ohio at this time. Dispensaries must be approved and licensed by the Ohio Board of Pharmacy pursuant to R.C. 3796.10, which sets forth detailed regulations for approving such dispensaries. Since the procedures set forth for purchasing and using medical marijuana in Ohio are strict and comprehensive, the lack of a current legal method for obtaining medical marijuana precludes Donoho's argument that his probation terms should not prohibit his use of this drug.

{¶24} Second, since Donoho cannot presently obtain marijuana legally within Ohio, it must be emphasized that transporting marijuana to Ohio from another state would also be illegal. Federal law does not recognize marijuana as a legal substance and transportation of marijuana across state lines is violative of federal law. *See* 21 U.S.C. 812 Schedule I (c)(10) (classifying marijuana as a schedule I controlled substance); 21 U.S.C. 841(a)(1) (prohibiting the distribution of a controlled substance); and 18 U.S.C. 1952(a)(3) and (b) (prohibiting travel in interstate commerce with intent to carry on "unlawful activity," including a business enterprise involving narcotics or controlled substances).

8

**{¶25}** Further, as noted above, the use of medical marijuana is permitted only when an individual obtains the marijuana from "a retail dispensary licensed under this chapter [Chapter 3796]." R.C. 3796.22(A)(1). Licensed dispensaries are permitted to be located in specific geographic regions or districts within Ohio, as established by the Ohio Board of Pharmacy. Ohio Adm.Code 3796:6-1-01(E).[1] There is no evidence that any licensing of dispensaries outside of the state of Ohio has occurred which would permit a resident of Ohio to purchase marijuana from another state for use in Ohio at this time.

**{¶26}** Finally, the terms of Donoho's probation prohibited his travel out of the state of Ohio. Thus, he could not travel to another state where marijuana was legally sold in order to obtain medical marijuana.

**{¶27}** For the foregoing reasons, the lower court's decision should be affirmed.

---

1. Pursuant to the Ohio Board of Pharmacy, districts have been created in four separate regions of Ohio. https://www.medicalmarijuana.ohio.gov/Documents/Dispensaries/Dispensary%20Districts/Medical%20Marijuana%20Dispensary%20Districts.pdf (accessed Nov. 8, 2018).